UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) </br> ) </br> Plaintiff, ) </br> ) </br> v. ) </br> ) </br> BOBBY J. HAMILTON, a/k/a ) </br> BUCK HAMILTON, ) </br> ) </br> Defendant. ) | Criminal Action No. </br> 6:18-CR-57-REW-10 |

**REPORT AND RECOMMENDATION**

This case is before the Court on Defendant's Motion to Suppress. [DE 222]. The district judge referred this matter to the undersigned for a Report and Recommendation. The United States responded to the Motion [DE 238], Defendant replied [DE 243] and the Court held a hearing at which the parties presented witnesses and arguments to the Court. [DE 278]. The matter is ripe for decision. For the reasons stated herein, the Court recommends the District Court deny Defendant's Motion to Suppress.

**I. FACTUAL BACKGROUND**

This case arises from a drug investigation in June 2018. At issue in this case is a search warrant allowing the search of Defendant Buck Hamilton's Facebook account for a ten-month time period. The facts leading to this search warrant, as set forth in the search warrant affidavit by Special Agent Todd E. Tremaine ("SA Tremaine") with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), are as follows:

SA Tremaine obtained information from two sources of information (SOI #1 and #2) that Defendant Hamilton's co-defendant, Lawrence Collinsworth, was a supplier of methamphetamine.

[DE 222-2 at Page ID # 582]. In July 2018, SA Tremaine learned from the Kentucky State Police Detective Ben Graves that a confidential informant ("CI") stated Collinsworth obtained large quantities of methamphetamine from Louisville, Kentucky, and exchanged Facebook Messenger messages with Collinsworth about purchasing methamphetamine. In September 2018, a third SOI consented to a search by ATF of his Facebook Messenger messages, which revealed drug-related messages between Collinsworth and SOI #3.

On September 11, 2018, the Knox County, Kentucky, Sherriff's office arrested Collinsworth based on information about a shooting Collinsworth was involved in that day. [DE 222-2 at Page ID # 584]. After Collinsworth was given his *Miranda* warning, SA Tremaine interviewed him. Collinsworth admitted to SA Tremaine that he obtains methamphetamine from sources in Louisville and resells it. [*Id.* at Page ID # 584-85]. Collinsworth provided consent to SA Tremaine to search his Facebook Messenger account.[1] [*Id.*]. Collinsworth admitted that most of his Facebook Messenger conversations were drug-related. One of the exchanges SA Tremaine read during this consent search was between Defendant Hamilton and Defendant Collinsworth, in which Hamilton stated: "And u do still owe me a ball." [*Id.* at Page ID # 587]. Collinsworth admitted to SA Tremaine that he had supplied Buck Hamilton with methamphetamine in the past. SA Tremaine stated that, in his experience as a law enforcement officer, he has come to know a "ball" as common slang for an eighth of an ounce of methamphetamine. [*Id.*].

The magistrate judge, relying on SA Tremaine's affidavit, issued a search warrant authorizing the search of Hamilton's Facebook account from January 1, 2018 through October 11,

---

[1] "Facebook" is so ubiquitous in 2019 it hardly needs explanation. "Facebook operates one of the largest social media platforms in the world, with other one billion active users." *Patel v. Facebook, Inc.*, -- F.3d -- , 2019 WL 3727424 at *1 (9th Cir., Aug. 8, 2019). Facebook has a "messenger" feature that functions like text messaging for users on the Facebook social media network. When used on a mobile device, the messenger feature is often accessed in a separate application than the Facebook social media network application.

2018. [DE 222-22 at Page ID # 574]. The information Facebook was required to disclose included, in part: all personal identifying information, passwords, all activity logs, all posts, all pokes, all photos and videos uploaded to Facebook, all profile information, friend lists and the friends' Facebook user identification numbers, all groups and networks of which Hamilton was a member, all "check-ins" and other location information, all communications made or received, all private messages, chat history, video chat history, pending "friend" requests, all Facebook searches, all past and present "friends" of Hamilton, all information about his use of Facebook Marketplace, all privacy settings, the length of service, sources of payment associated with the account, and all records of communications between Facebook and any person about Buck Hamilton's Facebook account.

## II. ANALYSIS

The parties appear to agree that social media accounts are entitled to some level of Fourth Amendment protection. *See, e.g., United States v. Meregildo*, 883 F. Supp. 2d 523, 525 (S.D.N.Y. 2012) (Social media "posting using more secure privacy settings reflect the user's intent to preserve information as private and may be constitutionally protected.") In his motion, Hamilton presents three arguments as to why the search of his Facebook account and the resulting evidence should be suppressed. First, Hamilton argues that the search warrant was not supported by probable cause as to anything outside of Facebook Messenger. Second, Hamilton challenges the scope of the warrant, arguing that the search warrant violated the particularity requirement. Finally, Hamilton suggests that the *Leon* good faith exception does not apply to salvage the asserted problems with the search warrant.

The Court will address each of these issues below.

A.   **PROBABLE CAUSE**

"Probable cause supports a search warrant when the affidavit demonstrates 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Powell*, 847 F.3d 760, 769 (6th Cir. 2017) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In reviewing a magistrate's decision of probable cause, however, "line-by-line scrutiny [of an underlying affidavit is] . . . inappropriate in reviewing [a] magistrate['s] decisions." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (quoting *Illinois v. Gates*, 462 U.S. 213, 246 n. 14 (1983) (alterations in the original). The "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of the affidavit . . ." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (citations omitted).

Here, the affidavit provided 24 pages of detailed information about SA Tremaine and his experience in investigating drug trafficking, Facebook, Lawrence Collinsworth's admissions to law enforcement, and his drug trafficking connection to Buck Hamilton. [DE 222-2]. The question, then, is whether the four corners of the affidavit set forth a sufficient nexus between Collinsworth's admissions and the evidence law enforcement believed it would find in Hamilton's Facebook account.

"For the requisite nexus to exist—regardless of whether the underlying crime requires the use of social media or an electronic device—the affidavit in support of the search warrant must establish why the government believes that relevant evidence may reside on the particular suspect's Facebook account." *United States v. Whitt*, 2018 WL 447586, at *2 (S.D. Ohio, Jan. 17, 2018). In this case, the affidavit sets forth the following nexus describing why the government believed it would find evidence of crimes in Hamilton's Facebook account: Collinsworth made statements about using Facebook Messenger to conduct his drug trafficking operation; there was a Facebook Messenger message *from* Hamilton to Collinsworth wherein Hamilton told

4

Collinsworth he owed him a "ball," common methamphetamine slang; Collinsworth told Officer Tremaine that he sold methamphetamine to Hamilton in the past. As the affidavit detailed, there was at least one message in his Facebook account wherein evidence of a crime—attempting to purchase methamphetamine—would be found.

The Court gives no credence to Hamilton's argument that his message to Collinsworth about a "ball" was "facially innocuous." [DE 222-1 at Page ID # 565]. Not only was this read in the context of Collinsworth telling SA Tremaine that Hamilton purchased methamphetamine from him in the past, but even a lay person would understand that the statement "And u do still owe me a ball" was about drugs, not sports. *See United States v. Young*, 847 F.3d 328, 343 (6th Cir. 2017) (holding that affidavit underlying wiretap warrant established probable cause where law enforcement affiant discussed drug slang such as "in the kitchen" used by the target). The term "8-ball" or "ball" is so common, in fact, it appears in numerous court opinions in this Circuit with little explanation. *See, United States v. Sturgill*, 761 F. App'x 578, 586 (6th Cir. 2019) (". . . selling methamphetamine purchased from Gibson in 8-ball quantities (about 3.54 grams)."); *United States v. Begley*, 602 F. App'x 622, 624 (6th Cir. 2015) ("Branstetter bought several 3.5 gram 'eight-balls' of methamphetamine a week[.]"); *United States v. Bryant*, 206 F. App'x 535, 538 (6th Cir. 2006) ("Bryant admitted that he had consistently used methamphetamine prior to that date in the amount of half an 'eight-ball' per use, which is approximately 1.75 grams.").

Accordingly, the Court finds there was probable cause to authorize a limited search of Hamilton's Facebook account.

**B.**     <u>**PARTICULARITY**</u>

Hamilton next argues that the search warrant for his Facebook account was so broad that it violated the Fourth Amendment's particularity requirement. Particularity requires searches to be "as limited as possible" and not "a general, exploratory rummaging in a person's belongings."

*Collidge v. New Hampshire*, 403 U.S. 443, 467 (1971). According to the affidavit, as well as common knowledge, Facebook collects a massive amount of information about its users. This information can include personal identifiers, contact information, lists of connections the user has to other individuals through "friend" lists and groups, events the user may attend, locations the user has visited, items the user has bought or sold through Facebook Marketplace, and much more. [DE 222-22 at Page ID # 593-97]. Facebook also maintains the "status updates" and photographs or videos the user posts. The user can control who sees his posts, photographs, and many other parts of his Facebook profile; he has the option to make these things viewable only to himself, to a certain group of people, or to the general public. [*Id*.].

The search warrant that was issued in this case essentially allowed law enforcement to "rummage" through Buck Hamilton's entire digital life on Facebook, limited only temporally. The Sixth Circuit has not addressed this issue specifically. Based on case law from other circuits and Fourth Amendment case law generally, however, the Court concludes the search warrant at issue here lacked particularity.

The Eleventh Circuit addressed the issue of an overly broad Facebook account search warrant in *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017). There, Blake and his co-defendant Moore were running a prostitution ring. Moore's publicly available Facebook account information listed her occupation as "Boss Lady" at "Tricks R [U]s." *Id*. at 966. The Court concluded that this gave the FBI probable cause to search her Facebook account for evidence related to the prostitution conspiracy. *Id*. at 973. The search warrants for Moore's account

> required Facebook to "disclose" to the government virtually every type of data that could be located in a Facebook account, including every private instant message Moore had ever sent or received, every IP address she had ever logged in from, every photograph she had ever uploaded or been "tagged" in, every private or public group she had ever been a member of, every search on the website she had

6

> ever conducted, and every purchase she had ever made through "Facebook Marketplace," as well as her entire contact list.

*Blake*, 868 F.3d at 966–67. In other words, like the search warrant for Hamilton, the United States sought the entire Facebook account information for Blake. The Eleventh Circuit found the search warrants lacked particularity because "[w]ith respect to private instant messages, for example, the warrants could have limited the request to messages sent to or from persons suspected at that time of being prostitutes or customers. . . . That procedure would have undermined any claim that the Facebook warrants were the internet-era version of a 'general warrant.'" *Id*. at 974 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). And unlike computers and cell phones, "the means of hiding evidence on a hard drive—obscure folders, misnamed files, encrypted data—are not currently possible in the context of a Facebook account" so that "when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data." *Blake*, 868 F.3d at 974.

A few other courts have also addressed the particularity requirement in similar social media account search warrants. For example, in *United States v. Shipp*, the Eastern District of New York found a Facebook search warrant lacking in particularity because it

> required the disclosure to the government of sixteen categories of information associated with the Facebook account . . . which included all contact and personal identifying information, all private messages and chat histories, all video history, all activity logs (including logs of activity in associated Facebook applications), all friend requests, all rejected friend requests, all photoprints, all Neoprints, and all past and present lists of friends.

*United States v. Shipp*, 2019 WL 3082484, at *6 (E.D.N.Y. July 15, 2019). The search warrant required disclosure of Shipp's use of Facebook totally unrelated to the charged crime. "[F]or example, there was no fact in the Affidavit suggesting that the account holder used Facebook Marketplace, a service that can be used to buy and sell items and services online, let alone that Facebook Marketplace would contain evidence of the charged crime of being a felon in possession

7

or even additional evidence that the account belonged to Shipp." *Id*. Other district courts around the country have concluded that Facebook search warrants must be limited in scope. *See United States v. Allen*, 2018 WL 1726349, at *6 n. 25 (D. Kan. Apr. 10, 2018) (Denying a motion to suppress for lack of particularity in a warrant seeking broad categories of Facebook account information because "the warrant was still limited to search for evidence relating to a specific crime, and it did not authorize on its face a search for every record associated with the Facebook accounts."); *United States v. Liburd*, 2018 WL 2709199 at *2 (E.D.N.Y. June 5, 2018) (Facebook search warrant was not overbroad because it was "limited by reference to an exemplary list of items to be seized . . . related to the existence of . . . [the] robbery conspiracy."); *United States v. Lowry*, 2015 WL 4399627 at *3 (S.D. Ohio July 17, 2015) (Search warrant for "all communications between any user or recipient and the substance of those communications" was not overbroad where Defendant used Facebook Messenger to exchange nude photographs with minors.).

The Court finds the search warrant for ten months of activity in Hamilton's entire Facebook account was overbroad. Like cell phones and computers, social media can contain "[t]he sum of an individual's private life . . . through a thousand photographs labeled with dates, locations, and descriptions. . . ." *Riley v. California*, 573 U.S. 373, 394 (2014). Yet, again, "the means of hiding evidence on a hard drive—obscure folders, misnamed files, encrypted data—are not currently possible in the context of a Facebook account" so that "when it comes to Facebook account searches, the government need only send a request with the specific data sought and Facebook will respond with precisely that data." *Blake*, 868 F.3d at 974. Thus, the search warrants *can and should* be targeted and particular. In fact, the United States listed fifteen categories of Facebook data in the search warrant, many of which were further broken down into additional categories.

8

[DE 222-2, Page ID # 574-75]. The United States was capable of understanding the nuances of Facebook and targeting certain categories of data but chose to seek everything possible.

The affidavit supporting the search warrant for Hamilton's account provided no justification for "rummaging" through Hamilton's private digital life to the extent authorized. For example, there was no suggestion that Hamilton bought or sold drugs through Facebook Marketplace; thus, law enforcement was unlikely to find evidence of that crime in reviewing his Facebook Marketplace activity. Similarly offensive to the Fourth Amendment was the search of Hamilton's "gifts," "pokes," all Facebook searches performed, all groups Hamilton is in, his rejected "friend" requests, his "friends" list user identification numbers, and his "check ins," just to name a few examples. The target was Facebook Messenger, not Hamilton's entire account.

Nor does the Court find the United States' argument that anything and everything in the Facebook account could be used to prove identity of the Facebook user and control of the account persuasive. Taken to its logical conclusion, this argument nearly obviates the particularity requirement altogether; almost anything in someone's social media data can be used to show they did (or did not) own and control that account. In fact, when the United States was asked at the hearing what portion, if any, of a person's Facebook account did not establish identity and/or control, it could not do so. The United States is certainly entitled to search for this information to a reasonable extent; for example, the registered user, email addresses, birth date, telephone number, physical address, and IP addresses associated with the account are likely to show ownership and control of the account. The breadth of information the search warrant required Facebook to disclose, however, amounted to "a general, exploratory rummaging" in Hamilton's digital life that did not comport with the particularity requirement of the Fourth Amendment. *Collidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

"[A]n infirmity due to overbreadth does not doom the entire warrant. The remedy is to sever the offending phrase from the warrant, suppress any evidence collected under it, and admit the evidence collected under the valid portions that remain." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018) (internal quotation marks and citation omitted). As discussed below, however, the Court need not decide what categories of information should be severed. Rather, because the search warrant was sought and executed in good faith, the *Leon* exception to the exclusionary rule applies. The *Blake* Court aptly described this situation:

> [W]e need not decide whether the Facebook warrants violated the Fourth Amendment because, even if they did, the district court did not err in allowing the government to use evidence gathered as a result of them. The Facebook warrants fall into the "good-faith exception" to the exclusionary rule established by *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984*). See United States v. Herring*, 492 F.3d 1212, 1215 (11th Cir. 2007) ("[W]hether to apply the exclusionary rule is an issue separate from the question [of] whether the Fourth Amendment . . . [was] violated by police conduct.").

*United States v. Blake*, 868 F.3d 960, 974 (11th Cir. 2017).

C. **THE *LEON* GOOD FAITH EXCEPTION**

The *Leon* good faith exception permits the admission of evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *United States v. Leon*, 468 U.S. 897, 905 (1984).

> In general, suppression of evidence obtained pursuant to a search warrant later found to be defective "should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." In particular, the *Leon* court explained, suppression is appropriate if (1) the magistrate was "misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) the magistrate "abandoned his judicial role" or neutrality; (3) the warrant was "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable; or (4) the warrant was so "facially deficient" that it could not reasonably be presumed valid.

*United States v. McClain*, 444 F.3d 381, 391 (6th Cir. 2009) (citing *Leon*, 468 U.S. at 922) (internal citations omitted). "[C]ourts will not exclude evidence when the costs of suppression outweigh

10

the benefits of deterrence, such as when reasonable officers rely on a magistrate's warrant in good faith." *United States v. Harney*, --- F.3d. ---, 2019 WL 3808356 at *2 (6th Cir. Aug. 14, 2019) (citing *United States v. Leon*, 468 U.S. 897, 919-21 (1984)). The "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Leon*, 468 U.S. at 916.

Hamilton argues the warrant was "so lacking in indicia of probable cause" and so "facially deficient" that a reasonable officer would not rely upon it. [DE 222-1 at Page ID # 567]. He further argues that the affidavit at issue here was "bare bones" and contained only "'suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge . . . .' *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citation omitted)." [*Id.*].

The Court disagrees with this characterization of the search warrant. The search warrant incorporated a detailed affidavit setting forth the drug conspiracy Collinsworth confessed to and his corroborating Facebook Messenger messages with various individuals, including Hamilton. Specifically, Collinsworth told SA Tremaine that he sold methamphetamine to Hamilton, and then showed him a Facebook Messenger message wherein a "Buck Hamilton" on Facebook requested a "ball," a common quantity of methamphetamine. While the search warrant SA Tremaine sought and obtained was overbroad, the Court cannot possibly conclude it was the result of some culpable conduct.

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.
>
> In short, where the officer's conduct is objectively reasonable, excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would

> and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.
>
> This is particularly true, we believe, when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope. In most such cases, there is no police illegality and thus nothing to deter. It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.

*United States v. Leon*, 468 U.S. 897, 919–21 (1984). SA Tremaine reasonably believed he had authorization from a neutral judicial officer, pursuant to a detailed search warrant, to obtain large volumes of information from Facebook. He acted in objectively good faith in searching Hamilton's Facebook account within the bounds of the search warrant, albeit overly broad. *See United States v. Blake*, 868 F.3d 960 (11th Cir. 2017) (holding that the Facebook search warrants, though violating the particularity requirement, "were not 'so facially deficient' that the FBI agents who executed them could not have reasonably believed them to be valid."); *accord United States v. Lowry*, 2015 WL 4399627 at *4 (S.D. Ohio July 17, 2015) ("[T]here is substantial evidence to suggest the Deputy acted in good faith and upon a reasonable basis in executing the search warrant.").

Accordingly, the *Leon* exception to the exclusionary rule applies and the evidence found in the Hamilton's Facebook account should not be suppressed.

**D.    INDEPENDENT SOURCE**

At the suppression hearing, SA Tremaine testified about evidence incriminating Hamilton found during the consent search (and subsequent search pursuant to a search warrant) of Collinsworth's Facebook account. The search warrant authorizing the search of Collinsworth's Facebook account, although supported by the same affidavit as the was used for Hamilton's search warrant, is not challenged here. Hamilton conceded at the hearing that he has no right to privacy

in any communications that would have been available to law enforcement during a search of Collinsworth's Facebook account. "The exclusionary rule has no application [where] the Government learned of the evidence from an independent source." *Segura v. United States*, 468 U.S. 796, 805 (1984) (citations and quotation marks omitted) (alteration in original). *See also United States v. Flores*, 30 F. Supp. 3d 599, 605 (E.D. Ky. 2014) (citing *United States v. Kennedy*, 61 F.3d 494, 499 (6th Cir. 1995)); *United States v. Witherspoon*, 467 F. App'x 486, 490 (6th Cir. 2012). Any evidence inculpating Hamilton found during a search of Collinsworth's Facebook account is, therefore, not excludable under the Fourth Amendment through the current motion.

### III. CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress [DE 222]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 30th day of August, 2019.



Signed By:
Matthew A. Stinnett  *MAS*
United States Magistrate Judge

13